## *In re* SIGNER, Bankrupt.

(*District Court, S. D. New York.* April 29, 1884.)

BANKRUPTCY—SECTION 5110, SUBD. 5—LOSS OF MONEY BY GAMING.

Under subdivision 5 of section 5110, Rev. St., it is competent for objecting creditors to prove, in opposition of the bankrupt's discharge, his loss of money by gaming at any time since the bankrupt act, and within the period at which any of his debts arose, or within which it may affirmatively appear or be reasonably supposed that his assets which ought to and would have come into the assignee's hands were affected through such loss.

Bankrupt's Discharge.

BROWN, J. The discharge of the bankrupt is resisted in this case upon the ground, among others, that he had lost part of his property in gaming, contrary to subdivision 5, § 5110. The question has been certified to the court whether any evidence should be admitted in support of the specification of the loss of money by gaming prior to the time when the objecting creditors' debt arose, as shown by the proof of debt, which was in 1878. The evidence cannot be restricted to the period since the objecting creditors' debt accrued; it must, at least, extend to the whole period covered by any debts from which the bankrupt is sought to be discharged. The clause of the statute which makes the loss of any part of the bankrupt's property by gaming a bar, is not limited as to time; nor is it qualified by the preceding language of the section, requiring an intent to defraud creditors. The reasoning in the *Case of Burk*, 3 N. B. R. 296, 300, is not, therefore, applicable. In the *Case of Jones*, 13 N. B. R. 286,

LOWELL, J., considered that an objection under this subdivision might be valid "if the acts were at a time so recent that they would affect any of the creditors who can come in under the bankruptcy." Further on he observes that "the fraudulent payments, conveyance, or loss by gaming do not appear to be thus limited, and seem to include all such payments, conveyances, and losses as have diminished the assets which otherwise would have come to the assignee."

The tenth subdivision of section 5110 provides that conviction of a misdemeanor under the bankrupt law shall prevent a discharge. Could it be held that such a conviction, to be a valid objection, must have occurred after the creditors' debt was contracted? It seems to me not, but that any such conviction since the passage of the bankrupt act would debar the bankrupt of any discharge under it, though the debt were contracted afterwards; and I am inclined to think that the same extended reach might be given to the other parts of section 5110, which are not limited in time, or to their effect upon specific creditors. It is by no means clear that it was not the purpose of the bankruptcy act to deny its privilege of discharge to all persons who, subsequent to its passage, should by their own acts violate its conditions. *In re Cretiew*, 5 N. B. R. 423; *In re Keefer*, 4 N. B. R. 389; *Peterson* v. *Speer*, 29 Pa. St. 478. If the act were regarded as a permanent law instead of a temporary one, it might seem an unreasonable construction, and not within its presumed intention, to hold a discharge barred through loss by gaming, where the loss was so long anterior to the bankruptcy as to have no actual relation to the debts or assets involved in the bankruptcy. But if a division of time since the act were attempted, it would often be difficult to fix any certain rule.

It is not necessary to determine the whole question at this time. The evidence as to when the bankrupt lost any of his property by gaming, must, however, be admitted as far back as the origin of any of the debts of the bankrupt; and also to such anterior period, since the passage of the act, in which it may affirmatively appear, or be reasonably supposed, that the assets of the bankrupt which ought to and would have come into the assignee's hands were depleted through such losses.